*NOT FOR PUBLICATION*

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

_____
:
:
ANNA DUNN,                                                           :
:
                     Plaintiff,            :          Civil Action No. 17-11661
:
      v.                                                      :
:                           **OPINION**
:
NANCY A. BERRYHILL,                                     :
Acting Commissioner of Social Security,       :
:
                     Defendant.          :
_____:

**WOLFSON, United States District Judge:**

      Anna Dunn ("Dunn" or "Plaintiff"), appeals from the final decision of the Acting Commissioner of Social Security, Nancy A. Berryhill ("Defendant") denying Plaintiff disability benefits under Title II of the Social Security Act (the "Act"). After reviewing the Administrative Record, the Court finds that the Administrative Law Judge's ("ALJ") opinion was based on substantial evidence and, accordingly, affirms the decision.

**I.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

      Plaintiff was born on March 6, 1951. AR 231. From 1990 through 2008, she held a job as a business manager at a home care facility. AR 236. On October 27, 2009, Plaintiff filed a Title II application for disability insurance benefits, alleging a disability onset date beginning June 2008, due to depression, panic disorder with agoraphobia, and severe migraine headaches. AR 217, 235. She stated that she had "stopped working because of severe depression and panic attacks." AR 235. Her claim was approved at the state agency level in January 2010, with an

1

onset date of October 9, 2010. AR 91. That decision, which found that Plaintiff met the criteria for psychiatric listing 12.04 for depression, was based largely on reports from Edward Sodaro, M.D., Plaintiff's treating psychiatrist. AR 90-91. At the time, Plaintiff was represented by attorney Raymond Lavallee. AR 122.

In February 2014, the New York County District Attorney's Office notified SSA that it had opened a fraud investigation against a number of individuals who had aided claimants in obtaining disability benefits under false pretenses, including Dr. Sodaro and attorney Lavallee. AR 95, 138-39. Specifically, the letter outlined a kickback scheme between Lavalee and Sodaro, in which Dr. Sodaro would fabricate claimants' disability in his medical records prior to their applying for disabilities, and Lavallee would then assist the claimants with disability paperwork that included false statements. AR 138-39.

Following SSA's receipt of the District Attorney's letter, SSA notified Plaintiff that her benefits would be suspended pending a redetermination of her prior claim. AR 159. In June 2014, SSA notified Plaintiff that it had found her not disabled upon redetermination after excluding evidence from Dr. Sodaro and attorney Lavallee. AR 161-62. Plaintiff then requested a hearing by an ALJ. AR 183. The ALJ held the hearing in June 2016, and, after again excluding evidence from Dr. Sodaro and Lavallee, which Plaintiff did not contest, the ALJ affirmed the finding of no disability. AR 34-89.

Presently, Plaintiff contests two aspects of the ALJ's decision. First, she argues that the ALJ erred by designating January 22, 2010—the date of the original decision awarding Plaintiff benefits—as the end of the relevant period, thereby ignoring nearly four years of evidence through Plaintiff's date of last insured of December 31, 2013. Second, while not contesting the ALJ's decision to disregard evidence from Dr. Sodaro, Plaintiff contends that the ALJ erred in

not finding that several of Plaintiff's physical conditions were severe under step two of the sequential evaluation process.

### A. Medical Evidence

#### 1. Evidence of Physical Impairments

Plaintiff was admitted to White Plains Hospital Center on June 20, 2005, and was diagnosed with breast cancer. AR 319-20. She underwent a right mastectomy, sentinel lymph node biopsy, and tram flap reconstruction. AR 320. A year later, in June, 2006, Plaintiff needed revision of her right mastectomy with fat graphs and a left breast mastopexy. AR 692. At an appointment with Dan Costin, MD in August, 2007, Plaintiff complained primarily of moderate fatigue, and noted a rare headache and occasional left shoulder pain, but denied fevers, chills, diarrhea, constipation, nausea, vomiting, abdominal pain, chest pain, dyspnea, or visual change. AR 666. In September, 2008, doctors at the Westchester Institute for Treatment of Cancer and Blood Disorders recommended continuing Arimidex, a breast cancer estrogen inhibitor, for a minimum of 5 years. AR 654-655. According to Plaintiff's testimony, between 2005 and 2011, she underwent 11 surgeries for different corrections with both breasts. AR 59.

Plaintiff returned to White Plains Hospital Center on October 22, 2008, complaining of back pain following a motor vehicle accident in June, 2008. AR 493-495. She was diagnosed with strained muscles and ligaments, which Dr. Sharon Frankel deemed a "very common injury." AR 497. She suffered no "significant trauma from the motor vehicle accident and no broken bones," and was prescribed a treatment consisting mainly of ice and rest. AR 654.

Complaining of headaches, Plaintiff underwent an MRI of the brain on June 12, 2008, which revealed mild cortical atrophy, possible chronic microvascular ischemic disease, and evidence of migraines. AR 660. There was no evidence of intracranial mass, hemorrhage, hydrocephalus, or acute infarction, and no abnormal intracranial enhancement. AR 660. Plaintiff

3

reported being able to control headaches and/or migraines with Excedrin twice a day. AR 550. Plaintiff does not appear to have had any follow-up procedures.

On September 4, 2009, Plaintiff returned to White Plains Hospital Center for pelvic floor reconstruction following "a long standing history of activity related urine leakage post hysterectomy." AR 475. There were no complications from the procedure, AR 1294, and it does not appear to have resulted in any work-related limitations. Notes from the procedure show a history of breast cancer, hypothyroidism, GERD, and osteopenia. AR 113.

In a consultative examination report submitted as part of Plaintiff's initial application for benefits, Dr. Sharon Revan observed that Plaintiff could walk with a normal gait, walk on heels and toes without difficulty, fully squat, and rise from a chair and the examination table without difficulty. AR 551-52. Dr. Revan noted "intermittent" pain from Plaintiff's motor vehicle accident, but a physical examination revealed no abnormalities other than slightly reduced lumbar flexion. AR 552. Dr. Revan opined that Plaintiff would have no limitations other than "mild" limitations in standing and walking distances. AR 553.

State medical consultant, Jose Rabelo, M.D., who reviewed Plaintiff's entire file in April 2014, similarly opined that, during the period at issue, the claimant had "no restrictions in the physical [residual functional capacity]," and rated all of her impairments as "non-severe." AR 95. In support of this conclusion, Dr. Rabelo cited supporting evidence including Dr. Revan's clinical observations, negative x-rays of the spine and non-severe findings on abdominal CT scans. AR 95. Likewise, state medical consultant, Elliott Goytia, M.D., who reviewed the Plaintiff's file in January 2015, provided a detailed summation of the pertinent medical evidence and opined that, during the period at issue, the Plaintiff's medical conditions were all non-severe. AR 116-17.

2. Evidence of Mental Impairments

4

The only records relating to Plaintiff's alleged mental impairments came from Dr. Sodaro, which, as noted, the ALJ ignored because of Dr. Sodaro's involvement in a fraudulent benefits scheme. AR 24, 521-25, 543-49.

### B. Plaintiff's Testimony Before ALJ

Plaintiff testified at the June 21, 2016 hearing before ALJ Brian LeCours. At the hearing, the ALJ was clear that the time frame of Plaintiff's testimony would be from disability onset date through the initial decision awarding benefits. AR 46. Plaintiff testified that she graduated from high school, can read and write, can do simple math, and can manage money. AR 41. She last worked in June of 2008 as the business manager of the Wartburg Home, a nursing home in Mount Vernon, New York, a position she held for nineteen years. AR 41-42. In that role, she oversaw the office staff of six individuals and about 1108 home health aides. AR 42.

Plaintiff also testified that she did not remember filling out certain forms that had been prepared by her lawyer, and that it was possible that she had signed a blank form and that her attorney had subsequently filled in the substantive sections. AR 49. She testified that her lawyer referred her to Dr. Sodaro, with whom she had six to eight visits, mostly by telephone. AR 51, 53.

Plaintiff underwent surgery for cancer in 2005, which, Plaintiff testified, resulted in her losing strength and power in her arm, and also caused edema, which forced her to wear a sleeve. AR 62. Despite these conditions, she continued to work a further three years. AR 62.

Plaintiff also testified regarding her car accident in June of 2008, which resulted in back and neck injuries. She testified that she saw a chiropractor for years after the accident, and received TENS treatment, heat, massage therapy, stretching, but nothing else. AR 63. She testified that for a "long time" after the accident, she "basically lounged," and, though she

5

cooked, her husband often had to help her with meals and dishwashing. AR 65, 69-70. During this period, she mostly read and watched TV. AR 68.

During the relevant period, Plaintiff was treated for anxiety and depression with antidepressants, and was also taking Arimidex for cancer. AR 56. She testified that she left her job because she was short-tempered, was not handling stress well, and "just couldn't do the hours that the job needed." AR 55. She resigned in June of 2008. AR 55. She had no ER or hospital visits related to her psychological symptoms. AR 57.

### C. ALJ's Decision

ALJ LeCours issued his decision on July 14, 2016. AR 17-33. The ALJ initially noted that, as Dr. Sodaro and Levallee had been implicated in a fraudulent scheme, and that reports signed by Levalee contained "trigger language" typical of his other fraudulent reports, the ALJ would not consider evidence emanating from these tainted sources. AR 20-21. Moving to the sequential evaluation process, the ALJ concluded, at step one, that the untainted medical evidence revealed the following medically determinable impairments: breast cancer status post mastectomy with abdominal weakness and hernias, migraine headaches, and unspecified back impairment status post motor vehicle accident. AR 23. At step two, the ALJ concluded that none of these impairments or combination of impairments significantly limited Plaintiff's ability to perform basic work-related activities for 12 consecutive months, and, thus, did not amount to "severe" impairments that would qualify her for disability benefits. AR 23. Finding no severe impairments, the ALJ concluded that Plaintiff was not under disability at any time from the alleged onset date through the date of the original determination granting benefits. AR 26.

## II. STANDARD OF REVIEW

On a review of a final decision of the Commissioner of the Social Security Administration, a district court "shall have power to enter, upon the pleadings and transcript of

the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). The Commissioner's decisions regarding questions of fact are deemed conclusive on a reviewing court if supported by "substantial evidence in the record." 42 U.S.C. § 405(g); *see Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). While the court must examine the record in its entirety for purposes of determining whether the Commissioner's findings are supported by substantial evidence, *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978), the standard is highly deferential. *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). Indeed, "substantial evidence" is defined as "more than a mere scintilla," but less than a preponderance. *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004). "It means such relevant evidence as a reasonable mind might accept as adequate." *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999). A reviewing court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992), *cert. denied*, 507 U.S. 924 (1993). Accordingly, even if there is contrary evidence in the record that would justify the opposite conclusion, the Commissioner's decision will be upheld if it is supported by the evidence. *See Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986).

Disability insurance benefits may not be paid under the Act unless Plaintiff first meets the statutory insured status requirements. *See* 42 U.S.C. § 423(c). Plaintiff must also demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A); *see Plummer*, 186 F.3d at 427. An individual is not disabled unless "his

physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). Eligibility for supplemental security income requires the same showing of disability. *Id.* at § 1382c (a)(3)(A)-(B).

The Act establishes a five-step sequential process for evaluation by the ALJ to determine whether an individual is disabled. *See* 20 C.F.R. § 404.1520. First, the ALJ determines whether the claimant has shown that he or she is not currently engaged in "substantial gainful activity." *Id.* at § 404.1520(a); *see Bowen v. Yuckert*, 482 U.S. 137, 146-47 n.5 (1987). If a claimant is presently engaged in any form of substantial gainful activity, he or she is automatically denied disability benefits. *See* 20 C.F.R. § 404.1520(b); *see also Bowen*, 482 U.S. at 140. Second, the ALJ determines whether the claimant has demonstrated a "severe impairment" or "combination of impairments" that significantly limits her physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c); *see Bowen*, 482 U.S. at 146-47 n.5. Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b). These activities include physical functions such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." *Id.* A claimant who does not have a severe impairment is not considered disabled. *Id.* at § 404.1520(c); *see Plummer*, 186 F.3d at 428.

Third, if the impairment is found to be severe, the ALJ then determines whether the impairment meets or is equal to the impairments listed in 20 C.F.R. Pt. 404, Subpt. P., App. 1 (the "Impairment List"). 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant demonstrates that his or her impairments are equal in severity to, or meet those on the Impairment List, the claimant has satisfied his or her burden of proof and is automatically entitled to benefits. *See id.* at §

404.1520(d); *see also Bowen*, 482 U.S. at 146-47 n.5. If the specific impairment is not listed, the ALJ will consider in his or her decision the impairment that most closely satisfies those listed for purposes of deciding whether the impairment is medically equivalent. *See* 20 C.F.R. § 404.1526(a). If there is more than one impairment, the ALJ then must consider whether the combination of impairments is equal to any listed impairment. *Id.* An impairment or combination of impairments is basically equivalent to a listed impairment if there are medical findings equal in severity to all the criteria for the one most similar. *Williams*, 970 F.2d at 1186.

If the claimant is not conclusively disabled under the criteria set forth in the Impairment List, step three is not satisfied, and the claimant must prove at step four whether he or she retains the "residual functional capacity" ("RFC") to perform his or her past relevant work. 20 C.F.R. § 404.1520(e); *Bowen*, 482 U.S. at 141. If the claimant is able to perform previous work, the claimant is determined to not be disabled. 20 C.F.R. §§ 404.1520(e), 416.920(e); *Bowen*, 482 U.S. at 141-42. The claimant bears the burden of demonstrating an inability to return to the past relevant work. *Plummer*, 186 F.3d at 428. Finally, if it is determined that the claimant is no longer able to perform his or her previous work, the burden of production then shifts to the Commissioner to show, at step five, that the "claimant is able to perform work available in the national economy." *Bowen*, 482 U.S. at 146-47 n.5; *Plummer*, 186 F.3d at 428. This step requires the ALJ to consider the claimant's residual functional capacity, age, education, and past work experience. 20 C.F.R. § 404.1520(f). The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether the claimant is capable of performing work and not disabled. *Id*.

### III. DISCUSSION

Plaintiff challenges two aspects of the ALJ's decision. First, she asserts that the ALJ improperly limited the relevant period to June 2008 through January 2010, thereby disregarding evidence through December 31, 2013, Plaintiff's date of last insured. Second, Plaintiff asserts that ALJ erred at step two of the sequential evaluation process in designating Plaintiff's physical impairments as non-severe.

### A. Relevant Period

According to Plaintiff, on redetermination, the ALJ was bound to consider all evidence from Plaintiff's alleged onset date through her date of last insured. As this matter arose due to an alleged fraud in connection with Plaintiff's previous benefits award, it is governed by 42 U.S.C. § 405(u)(1)(A), which directs SSA to "redetermine" entitlement to benefits whenever "there is reason to believe that fraud ... was involved in the application" for benefits. A March 2016 Social Security Ruling, which is binding on the agency, *see Justiniano v. Soc. Sec. Admin.*, 876 F.3d 14, 29 (1st Cir. 2017), clarifies the temporal scope of the review in such redetermination cases:

> We will consider the claim only through the date of the final determination or decision on the beneficiary's application for benefits (i.e., the original date of the allowance). We will not develop evidence about new medical conditions or impairments with an onset date after the original date of the allowance. We will not develop information about the recipient's or beneficiary's current state of health.

SSR 16-1p, 81 Fed. Reg. 13436 (Mar. 14, 2016); *see also* Hearings, Appeals, & Litigation Law Manual (HALLEX) I-1-3-25(C)(3) ("when redetermining a claim(s), an adjudicator will be directed to consider the claim(s) only through the date of the final and binding determination or decision on the beneficiary's or recipient's application for benefits (i.e., the original allowance date)."

Here, the ALJ limited the relevant period to "June 7, 2008, the original alleged onset date, through January 22, 2010, the date of the original determination granting benefits," AR 21,

10

which is entirely consistent with SSA guidance. Indeed, if anything, the ALJ's review of the record was over-inclusive. For instance, he considered evidence relating to Plaintiff's cancer surgeries in 2005 and 2006 despite no indication that they had significant lasting work-related impact during the relevant period. The ALJ also followed SSA guidance allowing consideration of "evidence that postdates the original date of the allowance if that evidence relates to the period at issue," SSR 16-1p, 81 Fed. Reg. 13436, by reviewing the reports of state medical consultants Dr. Rebelo and Dr. Goytia from 2014 and 2015 respectively, which both concluded that Plaintiff's physical impairments during the relevant period were not severe. The Court finds no other relevant, material evidence relating to the period at-issue that the ALJ overlooked, nor does Plaintiff point to any.[1]

Thus, the ALJ did not err in limiting the period at issue to June 7, 2008 through January 22, 2010.

**B. The ALJ's Identification of Plaintiff's Severe Impairments**

Plaintiff next argues that the ALJ erred, at step two, by not properly classifying her physical impairments as severe. At step two, the ALJ determines whether the claimant has demonstrated a "severe impairment" or "combination of impairments" that significantly limits his physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c); *see Bowen*, 482 U.S. at 146-47 n.5. Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b). These activities include physical

---

[1] The only post-2010 evidence that Plaintiff does highlight are a March 13, 2013 opthalmologist visit that reported "temporal field defects" in the left and right eye and bone density testing in January, 2012, that revealed osteoporosis of the lumbar spine and osteopenia of the left hip. ECF No. 17 at 16. However, these conditions do not relate to any impairments from the relevant period, and, even if they did, Plaintiff has failed to explain how they constituted "severe" impairments.

11

functions such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." *Id.* A claimant who does not have a severe impairment is not considered disabled. *Id.* at § 404.1520(c); *see Plummer*, 186 F.3d at 42. The claimant has the burden of showing that an impairment is severe. *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 144 (3d Cir. 2007).

According to Plaintiff, the ALJ overlooked several of Plaintiff's allegedly severe physical conditions, including her breast cancer and associated procedures and treatments; pelvic floor collapse with reconstruction and prosthetic grafting; muscle and ligament issues related to her car accident; and cortical brain atrophy and chronic microvascular schemic disease causing migraine headaches. Rather than showing why these conditions constitute "severe" impairments under the SSA, Plaintiff baldly contends that they "are all severe impairments which require no explanation, legal argument or medical sophistication to appreciate. All that is needed is common sense and an objective adjudicator." ECF No. 17 at 25. However, Plaintiff bears the burden of showing, with convincing medical evidence, that these impairments *significantly* limited her ability to perform basic work activities, and she has admittedly not even attempted to do so. *See Salles*, 229 F. App'x at 144. The ALJ, in contrast, did thoughtfully consider each of these impairments and reasonably concluded that they were not severe.

As an initial matter, the ALJ noted that these purported physical impairments, aside from her migraine headaches, were not the basis for Plaintiff's application for benefits: Plaintiff stated in her application that she stopped working due to depression, anxiety, and migraines. The evidence supporting these supposed mental limitations, the ALJ explained, arose almost entirely from Dr. Sodaro's reports, which the ALJ properly ignored because of the Doctor's alleged

fraudulent scheme. ² As Plaintiff produced no other similar psychiatric evidence, the ALJ properly determined that Plaintiff's alleged mental impairments were not medically determinable. 20 C.F.R. § 404.1521 ("[A] physical or mental impairment must be established by objective medical evidence from an acceptable medical source"). Although Plaintiff asserts that she suffers from anxiety and depression, these subjective statements, lacking medical support, do not satisfy her burden of establishing a medically determinable impairment. *See id.* ("We will not use your statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s)").

As for Plaintiff's alleged physical impairments, the ALJ reasonably concluded that substantial evidence did not support labeling them as "severe." The ALJ noted Plaintiff's history of breast cancer and mastectomy surgery with subsequent abdominal weakness and hernia. Most of Plaintiff's treatment for these procedures, the ALJ found, occurred "well before the disability onset date," and she worked for years thereafter, making it unlikely that they posed significant work-related limitations. AR 24. *See Vaughan v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995) (stating that "[t]he record reflects that Vaughan was able to, and did, work for several years while suffering from ailments she now asserts are disabling"); *Lyons v. Heckler*, 638 F.Supp. 706, 711 (E. D. Pa. 1986) ("If a claimant performs work during any period in which she alleges that she was disabled, the work performed may demonstrate that she is able to engage in

---

² Plaintiff does not argue that the ALJ improperly excluded evidence from Dr. Sodaro, but any such argument would, nonetheless, fail. The ALJ is directed to disregard evidence when there any "reason to believe that fraud or similar fault was involved in the providing of such evidence." 42 U.S.C. § 405(u)(1)(B). The 2014 letter from the New York County District Attorney's Office provided the ALJ with such a reason, and Plaintiff, in fact, admits that this evidence was "tainted." ECF No. 17 at 16. Thus, exclusion was proper.

substantial gainful activity"). Moreover, no other evidence in the record indicated that complications from Plaintiff's breast cancer caused any significant work-related limitations.

The ALJ also acknowledged Plaintiff's pelvic floor reconstruction hysterectomy, for which the claimant underwent surgery in September 2009. However, Plaintiff "merely indicated that she sees a urologist for this and takes antibiotic medications," and, again, "did not assert any difficulties that could be construed as work-related limitations." AR 24. These findings are well-supported by the medical record and tend to support the fact that Plaintiff did not suffer any functional limitations from this procedure.

The ALJ further noted that Plaintiff was involved in a motor vehicle accident in June 2008. Again, Plaintiff did not allege disability or receive long-term treatment due to any injury stemming from this accident. Records from Plaintiff's hospital visit after the accident revealed no abnormal physical findings, and the injury was treated conservatively with ice and rest. AR 492-93. Dr. Revan's report further characterizes Plaintiff's pain as "intermittent" and documents generally normal to mild objective and clinical findings. AR 553. Therefore, the ALJ properly found that Plaintiff did not suffer a severe impairment as a result of her automobile accident.

Dr. Revan's report also undermined Plaintiff's contention that her migraine headaches were severe. In the report, Plaintiff "acknowledged that her headaches generally occur when she wakes up in the morning, last for only about 30 minutes, and are responsive to over the counter Excedrin medication." AR 25. Moreover, her MRI scan from June 2008 showed only mild cortical brain atrophy.

Thus, the ALJ's finding of no severe work-related impairments during the relevant period was well-supported by substantial evidence.

## IV.   **CONCLUSION**

For the reasons set forth above, I find that the ALJ's decision is supported by substantial evidence in the record. Accordingly, the ALJ's decision is affirmed.

Dated: February 28, 2019

/s/ Freda L. Wolfson
Hon. Freda L. Wolfson
United States District Judge